[No. 11883. Department Two. December 11, 1914.]

THE STATE OF WASHINGTON, *Respondent*, v. SEATTLE & PUGET SOUND PACKING COMPANY *et al.*, *Appellants.*[1]

FOOD—SALE OF IMPURE FOOD—CRIMINAL PROSECUTION—EVIDENCE —SUFFICIENCY. In a prosecution for selling impure food, evidence of chemists that canned meat, which had been sold by accused on May 14, contained bacteria showing the first stages of decomposition two months later, after it had been exposed for that length of time on a retailer's shelves, is insufficient to sustain a verdict of guilty; since it must be proven beyond a reasonable doubt that the meats were impure on the day of sale.

Appeal from a judgment of the superior court for King county, Frater, J., entered November 1, 1913, upon a trial and conviction of selling impure food. Reversed.

*Revelle, Revelle & Revelle*, for appellants.

*John F. Murphy* and *Crawford E. White*, for respondent.

MOUNT, J.—The appellants were convicted upon a charge of selling impure and diluted food. The information charged that the defendants,

"In the county of King, state of Washington, on the 14th day of May, 1913, did then and there wilfully and unlawfully sell twenty-nine cans of Maryland crab meat flakes to H. A. Eba, in Seattle, King county, Washington, adulterated

[1]Reported in 144 Pac. 694.

food, the same being a filthy, decomposed, and putrid animal substance and unfit for human food."

The defendants pleaded not guilty to that charge. Upon the trial of the case, when the state had offered its proof, the defendants moved the court for a directed verdict, upon the ground that the evidence was insufficient to sustain the charge. The court denied this motion. The defendants refused to offer any evidence and the jury returned a verdict of guilty as charged. The defendants have appealed.

The only question presented in the case is the sufficiency of the evidence. It appears that the appellant Seattle & Puget Sound Packing Company is a jobber, doing business in Seattle. It purchased the cans of Maryland crab meat flakes in the Eastern states from the manufacturer. On the 14th day of May, 1913, it sold to H. A. Eba, the 29 cans in question, and Mr. Eba, who was a retailer, placed these cans of crab meat flakes upon his shelves for sale. On the 17th day of July, 1913, Mr. Adams, a deputy state food inspector, seized the cans in question. Some time thereafter, during the month of July, he had an examination of some of the meat made by the state chemist. At that time, it was found that bacteria of decomposition were in the meat analyzed; that this bacteria of decomposition rendered the food unfit for use. The chemist who made the chemical examination testified as follows:

"Q. There was no gas in these cans you tested at all? A. I found no evidence of gas. Q. Would you say that meat was in the first stages of decomposition when it was opened? A. I should say it was. Q. In the very first stages of decomposition? A. I couldn't say how far. . . . Q. So you don't know just when decomposition set in? A. Nor how far it had gone. . . . Q. If there is bacteria of that kind present in the meat, there is decomposition of the meat? At that time when you found it there was to a certain extent? A. To a certain extent there was. Q. To what extent there is no way of telling? A. No."

As stated above, this chemical examination occurred more than two months after the sale of the goods by the defendants to Mr. Eba. It was not shown, nor attempted to be shown, under what conditions the meat had been kept during the two months that it was in the possession of Mr. Eba. Nor was there any evidence to the effect that the condition of the meat, at the time of the examination, could not have resulted after the time it was purchased from the defendant corporation by Mr. Eba. We are satisfied that proving the condition of the meat two months after it was purchased by Mr. Eba from the defendants is not sufficient proof upon which the jury could base a conclusion that it was unfit for food at the time it was sold by the defendants to Mr. Eba. It is, no doubt, true, as argued by the state, that courts will take judicial notice of the natural law, and that canned goods will decompose in the ordinary course of time when it is not properly sterilized. And it is, no doubt, true that the manufacturers and dealers in goods are bound to know their condition. And it is true, also, that when food products are properly sterilized and sealed in cans, decomposition is arrested. But it is equally true that, when goods are properly sterilized and sealed in cans, they will eventually deteriorate and depreciate; tin cans will eventually corrode, and the product thereof will eventually become unfit for human food. It does not follow that sterilization, properly made, will forever continue. And it does not follow that meats which are properly canned may not decompose. It does not necessarily follow when meats in cans are found to be decomposed or in the first stages of decomposition that such decomposition took place more than two months prior to that time.

In this case, according to the evidence of the experts who made the chemical examination, the meats when examined were in the first stages of decomposition. The meats were purchased from the defendants by Mr. Eba on the 14th day of May, 1913. They were delivered to him at that time. He kept them on his shelves during that time. Two months later

it was found that they were in the first stages of decomposition, and were unfit for human food.  It would be a violent presumption, we think, to say that meats which were in the first stages of decomposition had begun such decomposition and were unfit for human food two months previous to that time.  It is well known that meats of any kind, if exposed to the action of heat and air, will deteriorate and decompose very rapidly.  Certainly, if decomposition had set in for a period of two months, it would be beyond the first stages of decomposition, especially where it was not shown that the conditions under which the meat was kept were such as to retard decomposition.  There is no showing here that the meats were kept where decomposition would not rapidly follow after it had once begun.

The defendants in this case were entitled to the presumption that they were innocent until proven guilty.  It was incumbent upon the state, therefore, to prove that at the time the defendants sold the meats in question to Mr. Eba, the meats were then adulterated, impure, and unfit for human food.  It cannot be presumed that two months after the sale the meat was in the same condition as at the time of the sale, unless, as we have seen, it was shown by some competent proof that the conditions could not change within that time.

No authorities are cited by either the appellants or the respondent which are in point upon this question.  But it seems to us clear that proof of the fact that the meats were in the first stages of decomposition two months after they were sold is not sufficient upon which the court or the jury may say that it was proven beyond a reasonable doubt that the meats were impure and unwholesome at the time of the sale two months previous.  We are therefore of the opinion that the trial court should have directed a verdict in favor of the defendants.

The judgment is reversed, and the cause ordered dismissed.

CROW, C. J., MAIN, and ELLIS, JJ., concur.